# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**TONY AND TINA LOVELACE**,

      Plaintiffs,

vs.                                          No. **CIV 01-690 MCA/RLP**

**CITY OF ALBUQUERQUE,
MARK PADILLA**, individually
and in his capacity as an
Albuquerque Police Department
Officer, and **JOHN ROBERTS**,
individually and in his capacity
as Deputy Chief of Operations of
the Albuquerque Aviation Police,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on ***Defendants City of Albuquerque, Mark Padilla, and John Roberts' Motion for Summary Judgment*** [Doc. No. 57] filed on October 24, 2002. Having reviewed the pleadings, memoranda, and exhibits of record, the relevant law, and otherwise being fully advised in the premises, the Court concludes that Defendants City of Albuquerque, Mark Padilla, and John Roberts are entitled to summary judgment with respect to all claims asserted by each Plaintiff. Accordingly, the Court grants summary judgment in favor of these Defendants and dismisses this action with prejudice.

## I.    __BACKGROUND__

The *Complaint* [Doc. No. 1] filed by Plaintiffs Tony and Tina Lovelace on June 18, 2001, alleges that on or about May 8, 2000, they were subjected to an unlawful arrest and detention upon exiting an airplane at the Albuquerque International Airport.  The Defendants named in Plaintiffs' *Complaint* are the City of Albuquerque, Southwest Airlines, Mark Padilla, John Roberts, Jerry Galvin, and Linda Pound.  All of Plaintiffs' claims against Jerry Galvin were dismissed pursuant to a *Stipulated Dismissal* [Doc. No. 25] filed on March 8, 2002.  All of Plaintiffs' claims against Southwest Airlines and Linda Pound were dismissed pursuant to this Court's ***Order of Dismissal with Prejudice of Defendants Southwest Airlines and Linda Pound*** [Doc. No. 64] filed on December 11, 2002.

On October 24, 2002, the remaining Defendants (City of Albuquerque, Mark Padilla, and John Roberts) moved for summary judgment against Plaintiffs.  With regard to this motion, the evidence of record and undisputed facts viewed in the light most favorable to Plaintiffs can be summarized as follows.

At approximately 6:00 a.m. on or about May 8, 2000, Plaintiffs appeared at the Southwest Airlines ticket counter at Albuquerque International Airport and purchased two round-trip airline tickets for flights departing to Las Vegas, Nevada, and arriving back in Albuquerque, New Mexico that same day.  Plaintiff Tina Lovelace (nee Evans) made this purchase by writing a check payable to Southwest Airlines in the amount of $610.00 and providing it to Southwest Airlines ticket agent Suzanne Onan.  (Defs. Statement of

Undisputed Facts ¶¶ 1, 2, 3; Compl. ¶¶ 3, 4; Tina Lovelace Dep. at 73-74; Ex. C to Defs. Mem.)

When the bank on which the check was drawn opened at 8:00 a.m. that morning, Ms. Onan called to verify that sufficient funds to cover the check were in Ms. Lovelace's account. Ms. Onan was informed that there were not sufficient funds in the account. Upon receiving this information, Ms. Onan called the Southwest Airlines Fraud Department and was told to turn the situation over to the local police department. Ms. Onan then called the Albuquerque Aviation Police. (Defs. Statement of Undisputed Facts ¶¶ 5, 6, 7; Ex. C to Def. Mem.)

In response to Ms. Onan's call, Defendant Mark Padilla, an officer of the Albuquerque Aviation Police, arrived at the Southwest Airlines ticket counter at approximately 3:30 p.m., where he was informed by Linda Pound, a Southwest Airlines supervisor, that Plaintiff Tina Lovelace had written a worthless check in the amount of $610.00. At that time, Defendant Padilla also was informed that Plaintiffs were scheduled to return to Albuquerque on a Southwest Airlines flight arriving at approximately 3:50 p.m. that day. (Defs. Statement of Undisputed Facts ¶¶ 8, 9, 10; Ex. D to Defs. Mem.; Ex. A to Pltfs. Compl.)

Plaintiffs arrived in Albuquerque as scheduled and were summoned from the airplane individually by means of an announcement over the airplane's public address system. Immediately upon departing the airplane, Plaintiffs were met by officers of the Albuquerque Aviation Police and Southwest Airlines personnel. Plaintiff Tina Lovelace was informed that

-3-

there was a problem with her check because there were insufficient funds to honor it.  (Def. Statement of Undisputed Facts ¶¶ 11-13; Tina Lovelace Dep. at 32-36.)

A conversation between Plaintiffs, officers of the Albuquerque Aviation Police, and Southwest Airlines personnel ensued.  According to the excerpts of deposition testimony submitted by Plaintiffs, a Southwest Airlines representative asked them whether they had any other way to pay for the airline tickets.  (Tony Lovelace Dep. at 73-74; Tina Lovelace Dep. at 40, 43.)  Ms. Lovelace answered with a statement to the effect that if the check had bounced, she had no other source of funds immediately available to her.  (Tina Lovelace Dep. at 40, 43.)  Mr. Lovelace answered with a statement to the effect that his credit card was "maxed out" and could not be used to pay for the tickets.  (Tony Lovelace Dep. at 75; Tina Lovelace Dep. at 40, 43.) Mr. and Mrs. Lovelace both recall thinking to themselves that Mr. Lovelace's parents were about three hours away and that they could come and take care of the problem, but these thoughts were not conveyed to the airlines representative or the police officers at the time that Plaintiffs were questioned upon exiting the airplane.  (Tony Lovelace Dep. at 74-75; Tina Lovelace Dep. at 40-41.)

After this conversation, Plaintiffs were handcuffed and taken into custody by the police officers.  They were initially taken to the office of the Albuquerque Aviation Police at the airport and asked a series of basic booking questions for approximately thirty minutes. Thereafter, Ms. Lovelace was charged with a violation of the State of New Mexico's Worthless Check Act, N.M. Stat. Ann. §§ 30-36-1 to -30-36-10 (Michie 1978 & Supp. 1997), and taken to the Bernalillo County Detention Center, where she was detained for an

additional six hours.  Mr. Lovelace was released from custody and was not charged with any offense.  (Compl. ¶ 15; Defs. Statement of Undisputed Facts ¶¶ 16, 17, 18, 19, 20, 21; Tina Lovelace Dep. at 44-45; Tony Lovelace Dep. at 36-38; Ex. F. to Defs. Mem.)

In the *Complaint*, Plaintiff Tina Lovelace admits that the check she gave to the airline was drawn in an amount greater than her account balance, but she claims that there was an arithmetic error in posting to her check ledger.  (Compl. ¶ 6.)  According to her checking account statement, Ms. Lovelace's checking account had a balance of $375.93 on the date that she wrote the check payable to Southwest Airlines in the amount of $610.00.  The checking account statement also indicates that there was less than $610.00 in her account during the fourteen days preceding that date.  (Ex. G to Defs. Mem.)  Ms. Lovelace admits in her deposition testimony that she also made at least one ATM withdrawal from her account on May 8, 2000.  (Tina Lovelace Dep. at 75-77.)

## II.    ANALYSIS

### A.    Standard of Review

Summary judgment under Fed. R. Civ. P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ."  Fed. R. Civ. P. 56(e).  Rather, "the adverse party's response . . . must set forth specific facts

showing that there is a genuine issue for trial." Id.  Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

The local rules regarding summary judgment procedures further provide, in relevant part, that:  "The memorandum in support of the motion must initially set out a concise statement of all of the material facts as to which movant contends no genuine issue exists." D.N.M. LR-Civ. 56.1(b).  Similarly, the "memorandum in opposition to the motion must contain a concise statement of the material facts as to which the party contends a genuine issue does exist."  Id.  Both parties' statements of material facts "must be numbered" and "must refer with particularity to those portions of the record" upon which the party relies. Id.

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

When an individual defendant raises the affirmative defense of qualified immunity in a summary-judgment motion, the burden shifts to the plaintiff to establish that the defendant's actions violated a constitutional or statutory right and that the right at issue was clearly established at the time of the defendant's unlawful conduct.  See Gross v. Pirtle, 245 F.3d 1151, 1155-56 (10th Cir. 2001).  If the plaintiff fails to meet this burden, then the Court must grant the defendant qualified immunity.  See id. at 1156.  If the plaintiff does establish the violation of a clearly-established constitutional or statutory right, then (for purposes of the defendant's summary-judgment motion) the burden shifts to the defendant to prove that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.  See id.

### B.    Civil-Rights Claims Against Individual Defendants

42 U.S.C. § 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Persons sued in their individual capacity under this federal civil-rights statute generally are entitled to qualified immunity unless it is shown that their actions violated a specific statutory or constitutional right and that the rights which they allegedly violated were clearly established at the time of the conduct at issue.  See Oliver v. Woods, 209 F.3d 1179, 1185 (10th Cir. 2000).  "Ordinarily, in order for the law to be clearly established, there must be

a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).

In this case, the constitutional right at issue is the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  In their *Complaint*, Plaintiffs contend that Defendants violated their Fourth Amendment rights by unlawfully arresting and detaining them when they arrived at the Albuquerque International Airport on the afternoon of May 8, 2000.

When, as here, a defense of qualified immunity is raised by individual Defendants in the context of the Fourth Amendment, the Court applies two distinct standards of reasonableness.  First, in determining whether an individual defendant's actions violated a specific right, the Court must decide whether the defendant conducted a search or seizure that was "unreasonable" under the Fourth Amendment.  Second, if such a violation is found, then in determining whether the constitutional right at issue was clearly established at the time of the search or seizure, the Court must answer the additional question of whether the contours of the right were "sufficiently clear that a reasonable official would understand that what he [did] violate[d] that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); accord Saucier v. Katz, 533 U.S. 194, 203-04 (2001).

For purposes of analyzing Fourth Amendment issues, the Tenth Circuit has divided interactions between police and citizens into three categories:  consensual encounters, investigative stops, and arrests.  See Oliver, 209 F.3d at 1186.  A consensual encounter

-8-

occurs when a police officer simply approaches a person to ask questions under circumstances where a reasonable person would feel free to refuse to answer and end the encounter.  Such encounters "are not seizures within the meaning of the Fourth Amendment, and need not be supported by suspicion of criminal wrongdoing."  Id.

An investigative stop occurs when an officer stops and briefly detains a person "'in order to determine his identity or to maintain the status quo momentarily while obtaining more information.'"  Id. (quoting Adams v. Williams, 407 U.S. 143, 146 (1972)).  Inasmuch as such brief investigative detentions are not consensual, they constitute a seizure and must meet two distinct requirements in order to be considered "reasonable" under the Fourth Amendment.  First, the officer "'must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'"  Id. (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).  Second, the investigative detention that follows the stop must be "reasonably related in scope to the circumstances" which justified the stop in the first place, Terry v. Ohio, 392 U.S. 1, 20 (1968), because the Fourth Amendment imposes "limitations on both the length of the detention and the manner in which it is carried out" in this context, United States v. Holt, 264 F.3d 1215, 1229 (10th Cir. 2001) (en banc).

An arrest is a seizure that is "'characterized by highly intrusive or lengthy search or detention.'"  Oliver, 209 F.3d at 1186 (quoting United States v. Cooper, 733 F.2d 1360, 1363 (10th Cir. 1984)).  Inasmuch as an arrest exceeds the limited scope or duration of an investigative stop, it must be supported by probable cause.  "'Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has

reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.'" Id. (quoting Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995)). "[T]he standard of probable cause 'applie[s] to all arrests, without the need to "balance" the interests and circumstances involved in particular situations.'" Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) (quoting Dunaway v. New York, 442 U.S. 200, 208 (1979)).

International airports present one of the contexts in which special needs may justify suspicionless searches. Cf. United States v. Yang, 286 F.3d 940, 944 n.1 (7th Cir. 2002) (noting "the heightened need to conduct searches at this nation's international airports" in light of the events of September 11, 2001. In addition, "'[t]he Fourth Amendment permits police officers to approach individuals at random in airport lobbies and other public places to ask them questions and to request consent to search their luggage, so long as a reasonable person would understand that he or she could refuse to cooperate.'" United States v. Carhee, 27 F.3d 1493, 1497 (10th Cir. 1994) (quoting Florida v. Bostick, 501 U.S. 429, 431 (1991)).

In this case, however, the undisputed facts and evidence of record indicate that Plaintiffs were individually summoned from the airplane in a manner that a reasonable individual would not feel free to ignore, and that they were confronted by airline personnel and police officers immediately upon exiting the airplane. Thus, the Court concludes that Plaintiffs' interaction with the police officers on the afternoon of May 8, 2000, began as an investigative detention rather than a consensual encounter.

An investigative detention at that time and location was justified at its inception because, based on the totality of the circumstances, the officers of the Albuquerque Aviation Police had a reasonable suspicion that Plaintiffs' airline tickets had been purchased with a worthless check in the amount of $610.00, and that using such a check to purchase the tickets constituted a criminal offense under the Worthless Check Act.  Such suspicions were reasonable based on the information reported to the officers by the airline personnel who, in turn, were reasonably relying on the information supplied by the bank.

The veracity of crime victims, or crime-scene bystanders, ordinarily is assumed in making determinations of reasonable suspicion and probable cause.  See United States v. Blount, 123 F.3d 831, 835 (5th Cir. 1997) (en banc).  Nevertheless, police officers "may weigh the credibility of witnesses" and are not required to believe one witness's testimony over that of another in making such a determination.  Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1259 (10th Cir. 1998).  In this case, the officers were entitled to rely on the veracity of the airline and bank personnel in deciding whether they had reason to stop Plaintiffs at the airport.

With regard to the reasons for the stop, Plaintiffs dispute several of the statements of fact enumerated in Defendants' motion on the grounds that Plaintiffs "have insufficient information to admit or deny" these statements (Pltfs. Resp. to Statement of Disputed Facts ¶¶ 5, 6, 7, 8, 9, 10), or that these statements are simply "denied," (Pltfs. Resp. to Statement of Disputed Facts ¶¶ 19, 21, 22, 25).  Plaintiffs do not, however, refer with particularity to those portions of the record upon which they rely to support their contention that these facts

-11-

are disputed, nor do they set forth specific facts showing that there is a genuine issue for trial as to whether the bank informed the airline personnel that there were insufficient funds in Ms. Lovelace's account to cover her check, and whether the airline personnel informed police officers of what the bank had told them.  Accordingly, these facts are deemed admitted for purposes of Fed. R. Civ. P. 56 and D.N.M. LR-Civ. 56.1.

Plaintiffs also object to the evidence used to support some of Defendants' statements of fact with regard to the reasons for the stop on the grounds that this evidence constitutes "impermissible hearsay."  (Pltfs. Resp. to Statement of Disputed Facts ¶¶ 7, 8, 9, 10, 21.) The Court agrees that neither the criminal complaint nor the booking sheet written by the police officers can be used to establish the truth of the assertion that Ms. Lovelace wrote a worthless check.   That assertion, however, is admitted in Paragraph 6 of Plaintiffs' *Complaint*, and the criminal complaint written by Defendant Padilla is attached and incorporated as an exhibit to Plaintiffs' *Complaint*.  Further, relevant evidence submitted in support of Defendants' summary-judgment motion in this civil action can be used for other, nonhearsay purposes, such as showing that the police officers had notice or knowledge of the material information supplied by the bank and airline personnel, or showing the verbal act or operative fact of filing a complaint and booking a suspect.  See generally Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d 1068, 1087, 1090 (10th Cir. 2001); Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1434 (10th Cir. 1993).  Thus, Plaintiffs' objections are without merit and do not show a genuine issue of material fact regarding the reasons for the stop.

The questions asked of Plaintiffs at the time they were first detained outside the airplane were directed toward ascertaining whether they had any other source of funds that could readily be used to pay for their airline tickets.  Under the circumstances, this line of questioning provided "'the least intrusive means reasonably available to verify or dispel . . . in a short period of time'" the officers' suspicions as to whether Plaintiffs had committed a criminal offense.  Holt, 264 F.3d at 1229 (quoting Florida v. Royer, 460 U.S. 491, 500 (1983)) (emphasis deleted).  Accordingly, detaining Plaintiffs for a brief period to pursue this relevant line of questioning was not unreasonable and did not exceed the permissible scope or duration of an investigative detention.

When Plaintiffs failed to identify any other source of funds to pay for their airline tickets, they were handcuffed and taken to the office of the Albuquerque Aviation Police. "[T]he use of firearms, handcuffs, and other forceful techniques" does not always fall within the limited scope of an investigative detention based on reasonable suspicion.  United States v. Melendez-Garcia, 28 F.3d 1046, 1052 (10th Cir. 1994).  Further, while there may be circumstances in which a suspect may be moved to another location for a brief period without exceeding the permissible scope or duration of an investigatory stop, see generally 2 Wayne R. LaFave, Search and Seizure, supra, § 9.2(g), the permissible scope and duration of an investigative stop generally does not include transporting a suspect to a police station for custodial interrogation, see Dunaway, 442 U.S. at 211-16; United States v. Gonzalez, 763 F.2d 1127, 1133 (10th Cir. 1985).  For these reasons, the Court concludes that when

Plaintiffs were handcuffed and taken to the office of the Albuquerque Aviation Police, they were subject to a full custodial arrest.

Generally, a full custodial arrest conducted without a warrant in a public place requires probable cause. See United States v. Morris, 247 F.3d 1080, 1088 (10th Cir. 2001); United States v. Vazquez-Pulido, 155 F.3d 1213, 1216 (10th Cir. 1998). Considering the totality of the circumstances at the time Plaintiffs were handcuffed, including the undisputed facts and evidence of record indicating that Plaintiffs failed to readily identify any other source of funds to pay for their airline tickets when they were informed of the worthless check, the Court concludes that these arrests were supported by probable cause.

Plaintiffs' argument that probable cause was absent in this case relies heavily on the premise that the Worthless Check Act cannot be violated until the person who issued the worthless check is given notice and three days to pay the check in full. This premise is false. Section 30-36-4 of the Worthless Check Act provides that:

> It is unlawful for a person to issue in exchange for anything of value, with intent to defraud, any check, draft or order for payment of money upon any bank or other depository, knowing at the time of the issuing that the offender has insufficient funds in or credit with the bank or depository for the payment of such check, draft or order in full upon its presentation.

N.M. Stat. Ann. § 30-36-4. When the amount of the check, draft, or order is "twenty-five dollars ($25.00) or more," the penalty for this offense is "imprisonment in the penitentiary for a term of not less than one year nor more than three years or the payment of a fine of not more than one thousand dollars ($1,000) or both such imprisonment and fine." N.M. Stat. Ann. § 30-36-5(B). Thus, a violation of Section 30-36-4 that involves a check in the amount

-14-

of $25.00 or more is classified as a felony under New Mexico law.  See N.M. Stat. Ann. §

30-1-6(A) (Michie 1978 &  Supp. 1994).

With regard to the element of "intent to defraud," Section 30-36-7 of the Worthless

Check Act further provides, in relevant part, that:

> In the prosecution of offenses under the Worthless Check Act, the
> following rules of evidence shall govern:
>
> . . . .
>
> . . . if the maker or drawer of a check, payment of which is refused by
> the bank or depository upon which it is drawn because of insufficient funds or
> credit in the account of the maker or drawer in the bank or depository, fails,
> within three business days after notice to him that the check was not honored
> by the bank or depository, to pay the check in full, together with any protest
> fees or costs thereon, such failure shall constitute prima facie evidence of a
> knowledge of the insufficiency of funds in the bank or depository at the time
> of the making or drawing of the check and of an intent to defraud.

N.M. Stat. Ann. § 30-36-7.  Reported opinions of New Mexico's appellate courts confirm

that Section 30-36-7 only sets forth a rule for establishing an evidentiary presumption at trial

in a criminal prosecution and does not establish a three-day waiting period as an additional

element of the offense stated in Section 30-36-4. See State v. Muzio, 105 N.M. 352, 353-55,

732 P.2d 879, 880-82 (Ct. App. 1987); State v. McKay, 79 N.M. 797, 800, 450 P.2d 435,

438 (Ct. App. 1969).  Thus, in this civil action, Section 30-36-7 does not preclude the Court

from concluding that Defendants had probable cause to believe that Ms. Lovelace violated

Section 30-36-4 of the Worthless Check Act, even though three days from the issuance of

her check had not yet elapsed.

Further, the probable-cause standard does "'not require the same type of specific evidence of each element of the offense as would be needed to support a conviction.'" United States v. Pollack, 895 F.2d 686, 691 (10th Cir. 1990) (quoting Adams, 407 U.S. at 148-49). Indeed, "[t]he fact that the police did not, at the time of arrest, know exactly what crime had occurred is not relevant, so long as they had probable cause to believe '*an* offense' had been committed." United States v. Edwards, 242 F.3d 928, 935 (10th Cir. 2001) (quoting United States v. Maher, 919 F.2d 1482, 1485 (10th Cir. 1990)). Thus, in order to show that they are entitled to summary judgment, Defendants need not establish beyond dispute that Plaintiffs had the intent to defraud at the time the check was issued. Rather, they are only required to show undisputed facts that establish probable cause to believe an offense had been committed. They have met this requirement in this case.

Even though Mr. Lovelace was not the person who issued the worthless check, the undisputed facts and evidence of record still lead to the conclusion that there was probable cause to believe he committed an offense. In particular, there was probable cause to believe that Mr. Lovelace was an accessory to the offense with which Ms. Lovelace was charged, see N.M. Stat. Ann. § 30-1-13 (Michie 1978 & Supp. 1994), or that Mr. Lovelace conspired with Ms. Lovelace to commit that offense, see N.M. Stat. Ann. § 30-28-2 (Michie 1978 & Supp. 1994).

To the extent that any individual Defendant erred in conducting or overseeing a full custodial arrest of Plaintiffs at the airport, such an error was the type of reasonable mistake for which that individual Defendant is shielded from liability under the doctrine of qualified

immunity.  "The concern of the [qualified] immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." Saucier, 533 U.S. at 205.  Here, this concern weighs in favor of granting qualified immunity to Defendants Padilla and Roberts regarding Plaintiff's civil-rights claims arising from the events that transpired on May 8, 2000.  As the Supreme Court noted in Atwater, 532 U.S. at 354, an officer who has probable cause to arrest a suspect is not required to balance the "costs and benefits" of a full custodial arrest, or to determine whether or not such an arrest is "in some sense necessary" in order to qualify for immunity from suit under 42 U.S.C. § 1983.  For these reasons, the individual Defendants are entitled to summary judgment on Plaintiffs' federal civil-rights claims.

### C.      Municipal or Supervisory Liability for Civil-Rights Claims

Governmental entities and government officials in their official capacity are subject to suit under 42 U.S.C. § 1983 only if the challenged actions were taken pursuant to an established institutional policy or custom, or by an official with final policy-making authority.  See Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1249-51 (10th Cir. 1999).  A supervisory official's liability for the actions of a third party or coworker under Section 1983 must be predicated upon that supervisory official's deliberate participation or conscious acquiescence in the deprivation of constitutional rights; mere negligence in supervising the third party or coworker is not enough.  See id. at 1250.

In response to Defendants' summary-judgment motion, Plaintiffs have come forward with no specific facts to show municipal or supervisory liability under the standards

articulated above.  The only evidence they have submitted to the Court regarding these issues is a response to an interrogatory that identifies three other civil actions in which officers of the Albuquerque Aviation Police were named as Defendants.  This response indicates that the first of these civil actions resulted in a verdict in favor of the Defendants.  The second was settled out of court for a sum of $1,000, and the third was settled out of court through mediation.  (Ex. C to Pltfs. Resp.)

Even when viewed in the light most favorable to Plaintiffs, this minimal information is insufficient to establish grounds for municipal or supervisory liability.   A civil action that resulted in a defense verdict does not give rise to a reasonable inference of any wrongdoing, and without more information about the details of the alleged misconduct at issue, there is no showing of any causal relationship between such alleged misconduct and the civil-rights violations alleged in this case.  See Jojola v. Chavez, 55 F.3d 488, 491 (10th Cir. 1995).  Thus, Defendants are entitled to summary judgment on the issues of municipal or supervisory liability.

> **D.**     **Civil Conspiracy Claims**

In order to defeat Defendants' summary-judgment motion regarding the claim of civil conspiracy alleged in Plaintiffs' *Complaint*, Plaintiffs must come forward with evidence to show that:  (a) a conspiracy existed; (b) a wrongful act was done pursuant to that conspiracy; and (3) damage resulted from that act.  See Reeves v. Wimberly, 107 N.M. 231, 235, 755 P.2d 75, 79 (Ct. App. 1988).  Plaintiffs have failed to do so.

It is not sufficient to show the mere existence of a conspiracy because "[c]ivil conspiracy is not itself actionable; the gist of the action is the damage arising from the act(s) done pursuant to the conspiracy." Id. at 235, 755 P.2d at 79. As explained in the above analysis of Plaintiffs' civil rights claims, the undisputed facts and evidence of record do not support a reasonable inference that the arrest and detention of Plaintiffs by the Albuquerque Aviation Police on May 8, 2000, was a wrongful act. Thus, Plaintiffs' cannot meet their burden of showing each element required to establish a cause of action for civil conspiracy, and Defendants are entitled to summary judgment on this claim.

**E.     Tort Claims**

The liability of the City of Albuquerque and its employees for statutory or common-law torts is limited by the New Mexico Tort Claims Act (NMTCA), N.M. Stat. Ann. §§ 41-4-1 to 41-4-29 (Michie 1978 & Supp. 2001). Section 41-4-4(A) of the NMTCA grants governmental immunity from liability for any tort to governmental entities and public employees acting within the scope of their duties, except as waived by Sections 41-4-5 to 41-4-12 of the NMTCA. The waiver of immunity applicable to "law enforcement officers while acting within the scope of their duties" contained in Section 41-4-12 is limited to

> liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico.

In their *Complaint*, Plaintiffs assert tort claims under New Mexico law for wrongful arrest, detention, malicious abuse of process, and failure to train and supervise. It follows

from the above analysis of Plaintiffs' civil-rights claims that Defendants are entitled to summary judgment as to each of Plaintiffs' state-law tort claims.

"Under New Mexico law, '[f]alse imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so.'" Romero v. Sanchez, 119 N.M. 690, 693, 895 P.2d 212, 215 (1995) (quoting N.M. Stat. Ann. § 30-4-3 (Michie 1994)); see also Mendoza v. K-Mart, Inc., 587 F.2d 1052, 1058 (10th Cir. 1978) ("One basic element of . . . a [false imprisonment] claim is that the plaintiff be confined or restrained in some unlawful way by the defendant."). Unlawful arrest or detention has "similar requirements." Romero, 119 N.M. at 693, 895 P.2d at 215. "[A] common-law defense to a civil wrongful arrest or a false imprisonment suit . . . requires only that the officer prove that he or she acted in good faith and with probable cause and therefore lawfully under the circumstances." State v. Johnson, 1996-NMSC-075, ¶ 16, 122 N.M. 696, 930 P.2d 1148. In this case, Plaintiffs have failed to show the required elements of a claim for wrongful arrest or wrongful detention because the undisputed facts and evidence of record do not support a reasonable inference that their arrests or their detention were unlawful. See id.

Under New Mexico law, the two torts of abuse of process and malicious prosecution are no longer recognized as separate causes of action, and their elements have been restated into a single tort known as "malicious abuse of process." See Weststar Mortage Corp. v. Jackson, 2003-NMSC-002, ¶ 6, ___ N.M. ___, 61 P.3d 823. The elements of this cause of action are as follows:

    (1)    the initiation of judicial proceedings against the plaintiff by the defendant;

    (2)    an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim;

    (3)    a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and

    (4)    damages.

Id. "[T]o demonstrate the improper act required in an action for malicious abuse of process, the 'plaintiff may show the defendant filed an action against that plaintiff without probable cause.'" Id. ¶ 16, 61 P.3d at 831 (quoting DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 24, 124 N.M. 512, 953 P.2d 277).

As explained in the above analysis of Plaintiffs' civil-rights claims, the undisputed facts and evidence of record viewed in the light most favorable to Plaintiffs do not support a reasonable inference that their arrest or their detention were unreasonable or lacking probable cause.  Further, Plaintiffs have come forward with no specific facts or argument relating to the other elements of this cause of action.  Thus, all the remaining Defendants are entitled to summary judgment on Plaintiffs' malicious abuse of process claim as well.  See Celotex Corp., 477 U.S. at 322-23.

As Plaintiffs have failed to come forward with evidence showing that any individual Defendant acted wrongfully in arresting and detaining them, it follows that there is no basis for holding Defendant City of Albuquerque or its supervisory personnel liable for such action under a theory of vicarious liability or negligent supervision and training.  See McDermitt v. Corr. Corp. of Am., 112 N.M. 247, 248, 814 P.2d 115, 116 (Ct. App. 1991).  Therefore, Defendants are entitled to summary judgment on these claims as well.

III.    **CONCLUSION**

For the foregoing reasons, all the remaining Defendants are entitled to summary judgment as to all the claims of each Plaintiff.

**IT IS, THEREFORE, ORDERED** that *Defendants City of Albuquerque, Mark Padilla, and John Roberts' Motion for Summary Judgment* [Doc. No. 57] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITH PREJUDICE** as to all claims against all Defendants.

**SO ORDERED** this 25th day of February, 2003, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
*United States District Judge*